CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Belen Acevedo**,<br><br>    Plaintiff,<br><br>    v.<br><br>**Daniel Czerny Guajardo**, in individual and representative capacity as trustee of The Daniel and Rebeca Rosenberg Heirs' Trust, dated December 15, 2003; and Does 1-10,<br><br>    Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of**: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Belen Acevedo complains of Daniel Czerny Guajardo, in individual and representative capacity as trustee of The Daniel and Rebeca Rosenberg Heirs' Trust, dated December 15, 2003; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from multiple sclerosis. She uses a walker and a scooter for mobility.

1

Complaint

2. Defendant Daniel Czerny Guajardo, in individual and representative capacity as trustee of The Daniel and Rebeca Rosenberg Heirs' Trust, dated December 15, 2003, owned the real property located at or about 275 S. Euclid Street, Anaheim, California, in June 2018.

3. Defendant Daniel Czerny Guajardo, in individual and representative capacity as trustee of The Daniel and Rebeca Rosenberg Heirs' Trust, dated December 15, 2003, owns the real property located at or about 275 S. Euclid Street, Anaheim, California, currently.

4. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

6. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

7. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is

founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

8. Plaintiff went to the property to shop at ALDI ("Store") in June 2018.

9. The Store is a facility open to the public, a place of public accommodation, and a business establishment.

10. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

11. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant, accessible handicap parking spaces available for persons with disabilities in front of the Store that complied with the Americans with Disability Act Accessibility Guidelines during plaintiff's visit.

12. There was a parking stall ostensibly reserved for persons with disabilities in front of the Store, but there was no access aisle that accompanied the parking stall. There was also no ADA signage in front of the stall. There was an International Symbol of Accessibility logo in the stall and there were blue painted lines that surrounded the parking stall, however.

13. Additionally, the space to the left of the parking stall was not accessible to plaintiff because there were poles staggered throughout the space. As a result, the space between plaintiff's vehicle and the pole closest to the vehicle was too narrow. In fact, the clear width space narrowed to about 2 feet. This was not accessible for plaintiff.

14. Plaintiff ultimately did use the inaccessible parking stall and then traveled behind parked cars and in the vehicular drive path with other vehicles, which was dangerous.

15. Paths of travel are one of the facilities, privileges, and advantages

offered by Defendants to patrons of the Store.

16. The walkway leading to the entrance of the Store had cross slopes of as much as 3%.

17. Currently, the walkway leading to the entrance of the Store has cross slopes of as much as 3%.

18. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

19. Plaintiff personally encountered these barriers.

20. This inaccessible facility denied the plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment.

21. Plaintiff plans to return and patronize the Store but is deterred from visiting until the defendants remove the barriers.

22. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

23. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

24. For example, there are numerous paint/stripe companies that will come and stripe an accessible parking stall and access aisle in front of the Store and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards

25. Plaintiff is deterred from returning and patronizing the Store because of her knowledge of the barriers that exist. Plaintiff will, nonetheless, return to

Complaint

assess ongoing compliance with the ADA and will return to patronize the Store as a customer once the barriers are removed.

26. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

27. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

28. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

   accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

 b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

 c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

29. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the

Complaint

bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

30. Unfortunately, there are no accessible parking spaces in front of the Store.

31. Under the ADA, there must be at least one accessible route connecting every building on the same site. 2010 Standards § 206.2.2. Travel in the vehicular drive path with vehicles is not part of an accessible route.

32. According to the California Building Code, it is not permissible to locate handicap-accessible parking stalls in locations where a person with disability is compelled to wheel or walk behind parked cars other than their own. CBC 1129B.3.3.

33. Here, the failure to provide an accessible route is a violation of the law.

34. Nowhere shall the cross slope of an accessible route exceed 2.1%. 2010 Standards § 403.3.

35. Here, the slopes along the walkways exceeded the levels allowed by law.

36. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the

Complaint

1991 Standards.

37. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

38. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

39. Given its location and options, plaintiff will continue to desire to patronize the Store but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

40. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

41. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

42. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

43. Because the violation of the Unruh Civil Rights Act resulted in difficulty,

discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: November 1, 2018          CENTER FOR DISABILITY ACCESS

By: _____
Chris Carson, Esq.
Attorney for plaintiff